723 P.2d 743 (1986)
The PEOPLE of the State of Colorado, In the Interest of M.P.R., A Child, And Concerning: D.J.H., Petitioner-Appellee, and
J.S. and T.R., Jr., Respondents-Appellants.
No. 85CA0173.
Colorado Court of Appeals, Div. I.
June 12, 1986.
*744 Banowetz, Liggett & Moore, Michael D. Liggett, Fort Collins, for petitioner-appellee.
C. Edward Stirman, Fort Collins, for respondents-appellants.
Janet Rodriguez, Fort Collins, guardian ad litem.
KELLY, Judge.
Respondents, J.S (mother) and T.R., Jr. (husband) appeal the trial court's grant of partial summary judgment in favor of the petitioner, D.J.H., holding that the petitioner is the biological father of the child, M.P.R. Respondents contend that the trial court erred as follows: (a) in ruling that the petitioner had standing to bring the paternity action; (b) in ruling that the petitioner's action was timely filed; (c) in admitting human leukocyte antigen (HLA) test results; (d) in applying a statute which became effective after the petition was filed; (e) in granting summary judgment when genuine issues of material fact remained; (f) in requiring the husband, the child's presumed father, to submit to blood tests; and (g) in failing to make a "best interests" evaluation pursuant to § 19-6-114, C.R.S. (1978 Repl. Vol. 8). We affirm.
The mother and the husband have been married since 1975. During 1981, they experienced marital difficulties and separated. However, they continued to see each other socially and engaged in sexual intercourse. During the separation, the mother and the petitioner also engaged in sexual intercourse. When the mother became pregnant in June 1981, she was uncertain of the child's paternity. After the husband learned of the pregnancy, he and the mother reconciled.
Petitioner has visited the child on only one occasion, and has not contributed to the child's support. Respondents have resisted all attempts of the petitioner to see the child, and the petitioner's persistent attempts to visit the child led to his arrest and conviction for harassment. Petitioner then brought this action under the Uniform Parentage Act § 19-6-101, et seq., C.R.S. (1978 Repl. Vol. 8) for a determination of a father and child relationship, for establishment of custody and visitation rights, and to determine his support obligations.

I.
Respondents first contend that the trial court erred in ruling that the petitioner had standing to bring an action to have paternity adjudicated in him despite the fact that the child was born during the marriage of the mother and the husband. We disagree.
In R.McG. v. J.W., 200 Colo. 345, 615 P.2d 666 (1980), our supreme court held that a man claiming to be a child's biological father has standing to bring an action to determine paternity under the Uniform Parentage Act § 19-6-101, et seq., C.R.S. (1978 Repl. Vol. 8), notwithstanding that § 19-6-107 does not, on its face, grant standing to such an individual. The court held that a contrary interpretation would violate the constitutional guarantee of *745 equal protection of the law and the Equal Rights Amendment to the Colorado Constitution.
R.McG. v. J.W. is dispositive of the standing issue in this case.

II.
Respondents next contend that the trial court erred in ruling that the petitioner's action was timely filed. We disagree.
Section 19-6-107(1)(b), C.R.S. (1978 Repl. Vol. 8) requires that an action to declare the existence of the father and child relationship must be brought within a reasonable time after obtaining knowledge of the relevant facts.
Here, the evidence supports the trial court's determination that the action was brought within a reasonable time. The petitioner brought his action within eleven months of the birth of the child soon after it became apparent that the problem could not be resolved without resort to litigation. It is not alleged that the petitioner's delay in bringing his action in any way prejudiced the respondents' rights or the rights of the child. We perceive no error in the trial court's ruling that the action was timely filed.

III.
Respondents next contend that the trial court erred in denying their motion in limine to exclude the results of the HLA tests on the ground that HLA tests have not been shown to be scientifically reliable.
This contention is disposed of by our holding in E.M.F. v. N.N., 717 P.2d 961 (Colo.App.1985) cert. denied (1986).

IV.
The respondents next contend that the trial court erred in denying their motion in limine in which they requested the court to apply Colo.Sess.Laws 1978, ch. 44, § 13-25-126 instead of § 13-25-126, C.R.S. (1985 Cum.Supp.). We disagree.
On May 26, 1983, the statutory amendment now codified as § 13-25-126, C.R.S. (1985 Cum.Supp.) became effective. The petitioner's action was filed January 18, 1983, four months earlier. The respondents maintain that the trial court improperly applied the statute as reenacted in 1983, instead of the statute as it existed at the time the action was filed.
The thrust of the respondents' argument is evidentiary. Under the new statute, if the experts agree that the blood tests show that the alleged parent is not excluded as the parent, then this evidence must be admitted. Under the old statute, admission is within the discretion of the trial court depending upon the infrequency of blood type. Compare § 13-25-126(1)(e)(III), C.R.S. (1985 Cum.Supp.) with Colo.Sess. Laws 1978, ch. 44, § 13-25-126(1)(c)(II). Respondents claim that, since the husband's blood type is not infrequent, the test results would have been inadmissible under the former statute, but that the trial court was required to admit it under the new statute.
We disagree with respondents' interpretation of the former statute. Under either statute, the blood tests are admissible. Hence, respondents have not been prejudiced by the trial court ruling.

V.
Another aspect of the trial court's decision to apply § 13-25-126, C.R.S. (1985 Cum.Supp.) rather than its predecessor, is that, under the new statute, if the experts conclude that blood tests show the probability of the alleged parent's parentage to be 97% or higher, the alleged parent is presumed to be the biological parent. Section 13-25-126(1)(e)(IV), C.R.S. (1985 Cum. Supp.). Just such circumstances exist here, and the trial court held that because the respondents offered virtually no evidence to overcome the presumption of the petitioner's paternity created by § 13-25-126(1)(e)(IV), C.R.S. (1985 Cum.Supp.), reasonable persons could not reach a different conclusion than that the petitioner is the child's biological father. Accordingly, it granted summary judgment.
*746 The respondents argue that the trial court erred in granting partial summary judgment because genuine issues of material fact remained to be decided by a jury. We disagree.
The only relevant evidence offered by the respondents on the issue of the father's identity was the mother's affidavit asserting that the petitioner and the mother used contraceptives at all times during the possible time of conception. When this evidence is considered along with the facts that (a) the respondents did not allege that the mother had sexual contact with any men other than the petitioner and the husband, (b) the blood tests excluded the husband as the child's biological father, and (c) the tests showed a 99.1742% probability of the petitioner's paternity, the conclusion is inescapable, either with or without the statutory presumption, that the petitioner is the child's biological father. Accordingly, there were no genuine issues of material fact, and summary judgment was proper. See Bunger v. Uncompahgre Valley Water Users Ass'n, 192 Colo. 159, 557 P.2d 389 (1976); C.R.C.P. 56(c); Morlan v. Durland, 127 Colo. 5, 252 P.2d 98 (1952).

VI.
The respondents next contend that the trial court erred in requiring the husband, who was the presumed father under § 19-6-105(1)(a), C.R.S. (1982 Repl. Vol. 8), to submit to blood tests. We disagree.
The respondents contend that, under § 13-25-126(1)(a), C.R.S. (1985 Cum.Supp.) (which is essentially identical to the prior statute), the presumed father may not be required to submit to blood tests. Section 13-25-126(1)(a), C.R.S. (1985 Cum.Supp.) provides:
"In any action, suit, or proceeding in which the parentage of any child is at issue, upon motion of the court or any of the interested parties, the court shall order the alleged mother, the child or children, and the alleged father to submit to one or more blood tests." (emphasis added)
The statute makes no mention of the presumed father. Yet, § 13-25-126(1)(e)(5), C.R.S. (1985 Cum.Supp.) provides that the presumption of legitimacy is overcome if the blood tests exclude the presumed father as the biological father. It is the respondents' position that the results of the test may be used to overcome the presumption of legitimacy only if the presumed father agrees to take the tests.
Under the circumstances here, it is immaterial whether the trial court had authority pursuant to § 13-25-126(1)(a), C.R.S. (1985 Cum.Supp.) to order the husband to submit to the tests. Section 19-6-113, C.R.S. (1982 Repl. Vol. 8) is sufficiently broad to provide the basis for the trial court's decision. Section 19-6-113(1)(b), C.R.S. (1982 Repl. Vol. 8) provides, in pertinent part:
"If a man has been identified as a possible father of the child, the court may, and upon request of a party shall, require the child, the mother, and the man to submit to appropriate tests...."
Since the respondents admit that the husband is a possible father of the child, the court had the authority to order the husband to submit to the blood tests under this section.
The remaining contentions are without merit.
The judgment of the trial court is affirmed.
PIERCE and BERMAN, JJ., concur.