981 P.2d 199 (1998)
In the Matter of S.R.H., a Child, Upon the Petition of S.L.S., Petitioner-Appellee,
and Concerning A.H. and N.A.H., Respondents-Appellants.
No. 98CA0394.
Colorado Court of Appeals, Div. II.
November 27, 1998.
As Modified on Denial of Rehearing January 7, 1999.
Certiorari Granted August 2, 1999.[*]
*200 Mark K. Workman, Fort Collins, Colorado, for Petitioner-Appellee
Dean & Reid, LLC, Daniel W. Dean, Fort Collins, Colorado, for Respondents-Appellants
Carole D. Carnahan, Guardian Ad Litem
Opinion by Judge CRISWELL.
In this action arising under the Uniform Parentage Act, respondents, A.H. (mother) and N.A.H. (husband), appeal from a trial court judgment affirming the magistrate's determination that a father and child legal relationship exists between petitioner, S.L.S., and the child, S.R.H. We affirm.
The respondents have been married for more than 20 years. Throughout this time, they have experienced marital difficulties. During the time of conception, mother was involved in an extramarital affair with petitioner, and genetic testing has confirmed that he is the biological father of S.R.H.
*201 Although mother knew husband was not the biological father of the child, she did not disclose this fact to him. Instead, husband attended the child's birth, was named as the child's father on the birth certificate, and received the child into his home as his own.
Soon after the child was born, mother began leaving her with petitioner one day a week without husband's knowledge. Sometime later, she allowed the child to travel out-of-state with petitioner to meet his family. Shortly after the child's first birthday, however, mother terminated all contact between petitioner and the child.
Three months later, petitioner brought this action under the Uniform Parentage Act, §19-4-101, et seq., C.R.S.1998, for the determination of a father-child relationship, for establishment of custody and parenting time rights, and to determine his support obligations. The cause was referred to a magistrate who received evidence establishing the foregoing facts and who thereafter found and determined that, considering those facts, both logic and public policy supported the determination that a parent-child relationship should be declared between petitioner and the child. Upon later review of this finding and determination by the district court, the magistrate's decision was approved. It is from the resulting decree that mother and husband appeal.

I.
Initially, we address respondents' request to strike the entry of appearance of the guardian ad litem (GAL). Citing In Interest of A.R.W., 903 P.2d 10 (Colo.App.1994), they argue that the GAL lacks any authority in the proceeding beyond the entry of the final order of paternity and, thus, does not have any standing to participate in this appeal. We disagree.
In In Interest of A.R.W., supra, the court had entered final orders in a paternity action from which no appeal had been taken. Nevertheless, the court had continued the guardian's appointment, and more than a year after the entry of the final orders, the guardian had filed a motion to modify the visitation schedule established by these orders. A division of this court determined that, under these circumstances, the authority of the guardian to continue to act in the child's interests terminated with the entry of the final permanent orders.
Here, in contrast, this appeal, was initiated by mother and husband, not by the guardian. And, it is, in a very realistic sense, a continuation of the paternity proceedings for which the GAL was appointed to oversee the child's best interests. If we were to deny the GAL the right to defend the orders entered by the trial court, we would be denying to the child the representation that the GAL's appointment was intended to assure.
We conclude, therefore, that the appointment of a guardian ad litem to represent a child's best interests in a paternity action continues during a direct appeal, initiated by one of other parties, from the permanent orders entered by the court in that action. Hence, the GAL here has standing, and indeed an obligation, to continue to represent those interests in these appellate proceedings.

II.
Respondents also contend that petitioner did not have standing to bring this action under §19-4-107(2), C.R.S.1998, because genetic tests establishing the probability of his parentage had not been conducted at the time this action was commenced. We disagree.
Section 19-4-107(2), C.R.S.1998, provides that any interested party may bring an action to determine the existence of a father and child relationship presumed under §19-4-105(1)(f), C.R.S.1998.
Under §19-4-105(1)(f), paternity is presumed if genetic tests "have been administered as provided in section 13-25-126, C.R.S., and the results show that the alleged father is not excluded as the probable father and that the probability of his parentage is ninety-seven percent or higher." Section 13-25-126(1)(a), C.R.S.1998, provides that, in any proceeding in which a child's parentage is at issue, the court, upon its own motion or that of an interested party, shall order the parties to submit to genetic testing.
*202 Statutes concerning the same subject matter must be construed together to give effect to the intent of the General Assembly and to give consistent, harmonious effect to all of their parts. When statutes on the same subject are potentially conflicting, the court must reconcile them, if possible, to avoid an inconsistent or absurd result. In Interest of D.R.V., 885 P.2d 351 (Colo.App. 1994).
To construe these statutes to require genetic testing establishing a presumption of paternity before the filing of an action under the Uniform Parentage Act would produce an absurd, unreasonable result. The mother, her husband, or the child could simply refuse to submit to testing, thereby precluding an action to determine paternity and violating the natural father's constitutional guarantee of equal protection. See R.McG. v. J.W., 200 Colo. 345, 615 P.2d 666 (1980); People in Interest of M.P.R., 723 P.2d 743 (Colo.App. 1986).
Instead, we construe these statutes to grant standing to a man claiming to be a child's biological father to commence an action under the Uniform Parentage Act without first having obtained genetic testing. After the action is filed, the putative father may obtain a court order requiring the genetic tests necessary to establish the presumption arising under §19-4-105(1)(f). See §§19-4-107(2) and 13-25-126(1)(a), C.R.S.1998.
Accordingly, we conclude that petitioner here had standing to bring this action and that the petition, which alleged that he was the child's biological father, was sufficient. See R.McG. v. J.W., supra; People in Interest of M.P.R., supra.

III.
We also reject the respondents' argument that the magistrate abused his discretion or otherwise committed prejudicial error in refusing to compel petitioner to submit to psychological testing. We are aware of no requirement that a court in a parentage case must have each of the parties to such a case submit to such testing.

IV.
Lastly, the respondents contend that the trial court erred in determining that, on the facts here, the logic and public policy underlying the presumption of paternity based on genetic testing is weightier than that underlying the presumption of paternity based on legitimacy and the act of openly holding out the child as one's own child. We disagree.
The Uniform Parentage Act provides that a man is presumed to be the father of a child if (1) he and the child's natural mother are married at the time the child is born; (2) he receives the minor child into his home and openly holds out the child as his natural child; or (3) genetic test results show that he is not excluded as the biological father and that the probability of his parentage is ninety-seven percent or higher. Sections 19-4-105(1)(a), (d), and (f), C.R.S.1998.
If presumptions of paternity arise in favor of several men, the Uniform Parentage Act does not require that one man's presumed paternity be disestablished before an action to determine paternity in another can be brought. W.C. in Interest of A.M.K., 907 P.2d 719 (Colo.App.1995). Instead, if conflicting presumptions exist, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Section 19-4-105(2), C.R.S.1998.
A basic purpose of the Uniform Parentage Act is to protect the father-child relationship. R.McG. v. J.W., supra. Thus, Colorado public policy generally favors legitimacy as expressed in the presumption of paternity accorded to a man married to the mother at the time of the child's birth. W.C. in Interest of A.M.K., supra. However, this presumption is rebuttable, not conclusive. People in Interest of R.T.L., 780 P.2d 508 (Colo.1989).
The reasons for favoring legitimacy include avoidance of the dire consequences to the child in changing the father-child relationship, protection of the family unit, and enforcement of child support obligations. W.C. in Interest of A.M.K., supra.
Here, on supporting evidence, the magistrate made a number of findings of fact upon which he concluded that petitioner should be declared the legal father of the child.
*203 The record shows that the child, who was three years old at the time of the paternity hearing, recognized husband as her father. In addition, the evidence was that, despite previous incidents of domestic violence, the respondents had reconciled, were in marriage counseling, and provided an excellent home for the child.
However, the magistrate also determined with record support that, while petitioner's involvement with the child had been limited, he and the child had spent some time together, including a week visiting petitioner's relatives. The magistrate also found that petitioner could be a positive figure in the child's life, even though he lacked some of the advantages in terms of material possessions and education possessed by respondents.
Finally, the magistrate found that there was no evidence that the child would be harmed, emotionally or otherwise, by learning that petitioner was her father, nor contact between petitioner and the child be contrary to the child's best interests.
Given these findings, which have record support, we cannot conclude that the presumption of legitimacy prevents the magistrate's conclusion. The record supports the determination that, because of the child's young age and her previous association with petitioner, the consequences of changing the father-child legal relationship are minimal. Likewise, the evidence supports the conclusion that a change in the father-child legal relationship serves to enhance child support enforcement, rather than undermine it. Finally, in light of the evidence of respondents' long-term domestic problems and petitioner's limited financial means, it cannot be said that either family can guarantee a secure and stable home or family unit.
Thus, we conclude that the magistrate's determination was not manifestly arbitrary, unreasonable, or unfair, and that the court did not err in approving it. See W.C. in Interest of A.M.K., supra.
Finally, even if we assume that the magistrate erred in certain of his factual findings, such error does not compel reversal. The trial court did not rely on those in affirming the magistrate's order. Instead, the trial court recognized the factual errors made and expressly determined that those errors did not detract from the overall accuracy of the magistrate's ruling.
The judgment is affirmed.
CASEBOLT and VOGT, JJ., concur.
NOTES
[*] Justice SCOTT does not participate.