Thomas OCEL, et al., Respondents,

v.

CITY OF EAGAN, defendant and third party plaintiff, Respondent,

v.

GABBERT DEVELOPMENT, INC., Bonestroo, Rosene, Anderlik and Associates, Inc., Schimek Construction, Inc., third party defendants, petitioners, Appellants.

No. C6-86-369.

Supreme Court of Minnesota.

March 20, 1987.

Lawrence M. Rocheford, St. Paul, for Schimek Const.

David B. Sand, Minneapolis, for Bonestroo, Rosene, et al.

Paul G. Neimann, Minneapolis, for Gabbert Development.

Don L. Day, Minneapolis, for City of Eagan.

Ronald H. Swanson, Minneapolis, for Thomas Ocel.

SIMONETT, Justice.

This case raises the same main issue decided today in *Bulau v. Hector Plumbing & Heating Company*, 402 N.W.2d 528 (Minn.1987), namely: when does the 2–year statute of limitations begin to run on a contribution claim arising from a defective improvement to real estate? Following *Bulau*, we hold that the statute of limitations begins to run on discovery of the defective and unsafe condition, and that Minn.Stat. § 541.051 (1986) is applicable to the facts of this case and bars the contribution action. We reverse the contrary court of appeals' ruling.

On March 8, 1978, a meeting was held at the site of a building lot in the City of Eagan. Represented at the meeting were Schimek Construction, Inc., a contractor, the City of Eagan, and Bonestroo, Rosene, Anderlik and Associates, Inc. (BRA), the city's engineering firm. The problem discussed was how Schimek might place and

build a house on the lot to overcome a problem of surface waters discharged onto the property by the city's storm sewer.[1] Following the meeting, Schimek began building a house on the lot in May 1978 for plaintiffs Thomas and Linda Ocel. Schimek completed the house that summer, the sale to the Ocels being closed in early November 1978. Even before closing, on September 11, 1978, the Ocels gave the city notice of a water damage claim pursuant to Minn.Stat. § 466.05 (1986). The record indicates the earliest that plaintiffs and the city had knowledge of the defective condition of the lot for building purposes was the meeting on March 8, 1978, at the building site.

On June 20, 1979, less than 2 years after the March meeting, plaintiffs Ocel sued defendant City of Eagan, alleging negligent construction of the storm sewer system. In May 1981, more than 2 years after the March meeting but within 2 years after the city was sued, defendant City of Eagan served third-party suit papers on third-party defendants Schimek, BRA, and Gabbert Development, Inc., alleging generally their negligence, and claiming contribution if the city were found liable to plaintiffs.

On summary judgment motion, the trial court ruled the third-party contribution actions were barred by the 2–year limitations period of Minn.Stat. § 541.051 (1986). The court of appeals reversed, holding that the limitation period did not begin to run until the defendant city was sued by plaintiffs.

Ocel v. City of Eagan, 390 N.W.2d 445 (Minn.App.1986).

■ 1. In *Bulau*, we held that section 541.051, subd. 1 (1986),[2] bars an action for contribution commenced more than 2 years after the discovery of the defective and unsafe condition. Here the defective condition of the lot as a suitable residential building site was discovered by March 8, 1978, or, at the latest, by September 11, 1978, when the Ocels sent their notice of damages claim to the city. Because the city did not bring its contribution actions within 2 years of discovery of the defective condition, we hold that the city's contribution claims are barred.

True, the 2–year limitation period had begun to run before the defendant city was sued and hence before the city could itself sue, at least sue for contribution. But absent any constitutional restraint, the legislature can so devise its statute of limitations. While this court has expressed possible due process concerns if a defendant were left with insufficient time within the 2–year period to bring a contribution action, *see, e.g., Bulau* and *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982), these concerns are not implicated here. In this case the city, after being sued by the Ocels, had at least 9 months left out of the 2–year period in which to bring its third-party contribution actions. The city, we might also observe, does not argue its contribution claim against Schimek is for the defective construction of the house itself, separate

---

1. Apparently, the storm sewer was designed to discharge surface waters onto the lot in question, which originally was designated an outlot and may not originally have been intended for a residential site. The tract had been developed by third-party defendant Gabbert Development, Inc. In 1977 Gabbert sold the lot to a contractor who had a contract with plaintiffs Ocel to build them a home on the lot. In August 1977, the building excavation filled with water. The Ocels rescinded their purchase contract with the builder. In January 1978, Gabbert resold the lot to third-party defendant Schimek, who had contracted with the Ocels to build a home for them on the lot.

2. Minn.Stat. § 541.051, subd. 1, provides in pertinent part:

[N]o action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, * * * arising out of the defective and unsafe condition of an improvement to real property, nor *any action for contribution or indemnity* for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property *more than two years after discovery thereof,* nor, in any event shall such a cause of action accrue more than 15 years after substantial completion of the construction. * * * [Emphasis added.]

and independent of the storm sewer system. But even if this claim were made, the house was built by the summer of 1978, its problems were then evident, and the city's contribution action against Schimek was still not commenced until more than 2 years thereafter.

2. The defendant city next argues that section 541.051, which was effective on August 1, 1980, cannot be applied retroactively to a contribution claim that existed prior to August 1, 1980. We agree the statute does not apply retroactively to existing claims. *Lovgren v. Peoples Electric Co.*, 380 N.W.2d 791, 795 (Minn.1986). A claim for contribution, however, does not fully exist until the claimant has paid more than its fair share, and, in *Calder v. City of Crystal*, 318 N.W.2d at 841–44, we held there was no retroactive problem in applying section 541.051 to a contribution claim that had not matured prior to the statute's effective date. Consequently, the statute applies to bar defendant city's contribution claims which were only inchoate on August 1, 1980.

3. Minn.Stat. § 541.051, subd. 1, further provides, "Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation, or inspection of the real property improvement against the owner or other person in possession." The city argues that the third-party defendants are "owners" or "persons in possession," and, therefore, the city's contribution actions should be excepted from the 2–year limitation period. We disagree.

The exception refers to "maintenance, operation, or inspection" of the improvement. These activities generally occur after an improvement is built, and they are usually performed by an owner or tenant.

The intent of the exception appears to be, as the trial court observed, to leave undisturbed the limitation period for ordinary landowner's liability. Here, however, the claims against the contractor, the developer, and the engineering firm are for "constructing" and "designing" the improvement, activities which are expressly covered by the 2–year limitations period.

4. Finally, contrary to the city's contention, we hold that Minn.Stat. § 327A.02 (1986) which requires a 10–year warranty for major construction defects in sales of dwellings does not apply to the city's claims.

Breach of statutory warranty claims under section 327A.02 are exempted from the 2–year statute of limitations. *See* Minn. Stat. § 541.051, subd. 4 (1986). This is of no help to the City of Eagan. Section 327A.02 is designed to give initial and subsequent home purchasers a cause of action against the builder.[3] *See* Note, *Minnesota Statutory Warranties On New Homes— An Examination and Proposal*, 64 Minn. L.Rev. 413, 415 (1980). The City of Eagan was never a purchaser or vendee of the Ocel home and has no claimant status under section 327A.02.

Reversed.

---

**3.** Minn.Stat. § 327A.02, subd. 1, provides: "In every sale of a completed dwelling, and in every contract for the sale of a dwelling to be completed, the vendor shall warrant to the vendee that: * * * (c) During the ten year period from and after the warranty date, the dwelling shall be free from major construction defects."

Minn.Stat. § 327A.03 then provides that the liability of the vendor or home improvement contractor does not extend to a loss not reported by the vendee or owner to the vendor or home improvement contractor in writing within 6 months after the loss is or should have been discovered. The City of Eagan never gave the 6–months notice to the contractor, Schimek. Neither, apparently, did the Ocels, who were purchasers.