Craig BRANDT, Appellant,

v.

HALLWOOD MANAGEMENT COMPANY, a Delaware corporation, Respondent,

Royal Electric Company, Inc., a Minnesota corporation, Respondent.

No. CX–96–1557.

Court of Appeals of Minnesota.

March 11, 1997.

Patrick K. Horan, Randall B. Spence, Meshbesher & Spence, Ltd., Woodbury, for Appellant.

James F. Mewborn, Arthur, Chapman, McDonough, Ketterin & Smetak, P.A., Minneapolis, for respondent Hallwood Management Company.

James J. Galman, Mary P. Rowe, Karen R. Cote, Jardine, Logan & O'Brien P.L.L.P., St. Paul, for Respondent Royal Electric Company, Inc.

Considered and decided by DAVIES, P.J., and SHORT and FORSBERG*, JJ.

## OPINION

THOMAS G. FORSBERG, Judge.

Appellant challenges the trial court's summary judgment ruling that his cause of action was barred by the two-year statute of limitations under Minn.Stat. § 541.051, subd. 1(a) (1996). We reverse and remand.

## FACTS

Respondent Hallwood is the property manager for the American National Bank Building in St. Paul. A major tenant in the building is the American Bank Corporation (ABC). In 1992, ABC became interested in leasing the 22nd floor but wanted to lease the space as an unimproved shell and remodel the space to suit its needs. Hallwood contracted with Minnesota Landmark Construction Company (Landmark) to tear down, or demolish, the space back to a shell. This work entailed removing the partition walls, the carpet, ceiling grid, and the light fixtures, etc. Hallwood intended to salvage the light fixtures so they could be used as replacement fixtures for other tenants. Landmark subcontracted the electrical work to respondent Royal Electric Company (REC). REC was to take down the lights, de-energize the electrical lines, and "drop" or disconnect the light fixtures so the demolition work could proceed.

REC dispatched two electricians to perform the work, Jeff Menth and Tom Ciekinski. The electrical work took approximately five hours to complete and was completed on the morning of July 29, 1992. In all, the demolition work was completed within two or three days. After the demolition work was done, Kevin Brink, the senior property manager for Hallwood at the time, did a "walk-

through" of the space and assumed the shell to be safe for remodeling to begin.

ABC contracted with McGough Construction Company (McGough), the general contractor, to do the remodeling work. After the demolition work was done, Brink contacted either ABC's representative or McGough to inform them that the demolition work was completed. Approximately one month later, on August 21, 1992, a permit to remodel the space applied for. Construction started on August 25, 1992. Prior to this time, there was no work being done on the space.

On September 8, 1992, appellant Craig Brandt, a carpenter with Zintl, Inc., was the first to arrive on the job site. Ken Thompson, McGough's superintendent, told him that everything was set and that he could begin his work wherever he wanted. On September 10, 1992, as he was installing metal studs and tracks, Brandt came into contact with an energized 277–volt electrical line. The resulting electrical shock caused him to fall from the scaffold on which he was working. He fractured his neck and suffered other injuries.

On May 3, 1995, Brandt brought suit against REC, alleging that REC was negligent, careless, and reckless in the manner in which it de-energized the electrical lines. Brandt also brought suit against Hallwood, claiming negligent maintenance, operation, and inspection of the property. Brandt further alleged that both respondents misrepresented that the electrical lines were de-energized.

## ISSUES

I. Are appellant's claims against Royal Electric Company barred by the two-year statute of limitation set forth in Minn.Stat. § 541.051, subd. 1(a) (1996)?

II. Do claims arising from the negligent performance of services fall within the language of Minn.Stat. § 541.051, subd. 1(a)?

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

### I.

■ When reviewing an appeal from summary judgment, this court asks: (1) whether there are any genuine issues of material fact and (2) whether the lower court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). On appeal, the evidence must be viewed in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Construction of a statute of limitation is a question of law that this court reviews de novo. *Sarafolean v. Kauffman,* 547 N.W.2d 417, 419 (Minn.App.1996) (citing *H.D. v. White,* 483 N.W.2d 501, 502 (Minn.App.1992), *review denied* (Minn. July 10, 1996)).

### II.

The question presented in this appeal is whether an individual performing demolition work in anticipation of remodeling work is covered by the protection of Minn.Stat. § 541.051. Appellant argues that the language of the statute does not cover demolition work, that REC did not construct an improvement to real property, and that his injuries did not result from the defective and unsafe condition of any improvement made to the real property. Respondent, on the other hand, argues that the demolition work it performed was part of a "continuous remodeling process" that resulted in the construction of improvements to the real property.

Minn.Stat. § 541.051, subd. 1(a) (1996), provides that

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the

real property more than two years after discovery of the injury * * *.

■ For REC to be covered by the protection of Minn.Stat. § 541.051, subd. 1, three elements must be satisfied: (1) REC must have constructed an improvement to real property; (2) appellant's claim must arise out of the defective and unsafe condition of the improvement; and (3) the defective and unsafe condition of the improvement must be the cause of appellant's injuries.

Initially, we must determine whether the demolition work preformed by REC constituted the construction of an improvement to real property within the meaning of Minn. Stat. § 541.051. Appellant argues that Minn. Stat. § 541.051 is inapplicable because the language of the statute does not specifically include those individuals who perform demolition work and also, that construction work does not include demolition work. According to appellant, the plain and ordinary meaning of "construction" is distinctly different from the meaning of the word "demolition." Conversely, respondent argues, and appellant concedes, that the demolition work performed by REC was in preparation for the construction/remodeling performed by McGough and without the demolition work, the actual construction could not have commenced. Respondent maintains that its work was simply part of a "continuous remodeling process."

■ Although a strict interpretation of Minn.Stat. § 541.051 is required, courts are to give effect to the plain meaning of the statute's words "without resort to technical legal constructions of its terms." *Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977). In *Pacific Indemnity,* the supreme court adopted a common-sense interpretation of the term "improvement," using the definition provided in Webster's Third New International Dictionary (1971). Similarly, in *Fiveland v. Bollig & Sons, Inc.,* 436 N.W.2d 478 (Minn.App. 1989), *review denied* (Minn. Apr. 24, 1989), this court adopted a common-sense meaning of the term "defective" and "defect," utilizing the definition contained in Webster's New Universal Unabridged Dictionary (2d Ed.1983). *Fiveland,* 436 N.W.2d at 480.

According to Webster's Unabridged Dictionary 392 (2d ed. 1983), "construction" means:

> 1. the act or process of building, or of devising and forming; fabrication, erection;
>
> \* \* \* \* \* \*
>
> 6. something constructed; structure; building.

Conversely, "demolition" means "a demolishing or being demolished; destruction." *Id.* at 483. "Demolish" means "1. to pull or tear down (a building, etc.). 2. to destroy; ruin." *Id.*

We conclude that the demolition work performed by REC does not fall within the ordinary definition of the word "construction." Hallwood contracted with Landmark to do the demolition work; ABC contracted with McGough to do the remodeling work. It is undisputed that REC was in no way contracted to perform any "construction" work on the property. REC was to simply remove the existing light fixtures and de-energize the electrical lines. Contrary to respondents' claims, there is no evidence that REC "constructed," "built," or added anything new to the 22nd floor during this process.

We are further persuaded by the language of Minn.Stat. § 541.051 itself. The statute specifically delineates those individuals afforded protection under it. Conspicuously absent is any mention of individuals who perform demolition work. "Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others." *Maytag Co. v. Commissioner of Taxation,* 218 Minn. 460, 463, 17 N.W.2d 37, 40 (1944) (citations omitted); Minn.Stat. § 645.19 (1996) ("Exceptions expressed in a law shall be construed to exclude all others."). The legislature failed to include, either intentionally or by mistake, those individuals who perform demolition work within the meaning of Minn.Stat. § 541.051. We cannot now do so. It is well established that when construing statutes, a reviewing court "cannot supply that which the legislature purposely omits or inadver-

tently overlooks." *Northland Country Club v. Commissioner of Taxation,* 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976) (citation omitted).

### III.

Appellant argues that his claims do not arise from an "improvement" to real property and is therefore not covered by the language of Minn.Stat. § 541.051. According to appellant, his claims arise from REC's negligent failure to de-energize the line feeding the electricity to the subject area of the building and not from any improvement made to real property. We agree.

The Minnesota Supreme Court has adopted the following definition of "improvement":

> by definition an improvement is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

*Pacific Indem.,* 260 N.W.2d at 554 (quoting *Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)). With regard to design or planning activities, they must result in an actual improvement to real property. *Anderson By and Through Anderson v. City of Coon Rapids,* 491 N.W.2d 917, 922 (Minn.App.1992), *review denied* (Minn. Jan. 15, 1993). Repairs to property are not enough. *Id.*

Appellant argues, and we agree, that there was no improvement made to the real property in this case. From the record, it appears that the conduit that appellant came into contact with is apparently the same conduit that existed in the building prior to any demolition work being done by REC. He also does not claim, nor does there appear to be any evidence, that REC constructed or altered the conduit in any manner.[1] Because the pre-existing conduit (or the electrical wire for that matter) appears to have existed from the time the building was constructed, it cannot constitute an improvement to the

---

**1.** We note that whether the conduit was constructed or altered by REC presents a genuine issue of material fact that necessarily precludes summary judgment in this case.

property. Thus, it cannot be said that appellant's injuries arose out of an improvement to real property.

REC counters, arguing the light fixtures and their component parts are permanent improvements to real property, increasing its usefulness and capital value. REC argues that the conduits were permanently installed and connected to and made an integral part of the light fixtures installed during the remodeling and thereby constitute an improvement to real property.

REC's argument, however, misses the focus of Minn.Stat. § 541.051. The statute is intended to apply to those individuals who, among other things, construct an improvement to real property. Indeed, light fixtures and their component parts can constitute an improvement to real property. *See Citizens Sec. Mut. Ins. Co. v. General Elec. Corp.*, 394 N.W.2d 167, 170 (Minn.App.1986) (holding that installation of light fixtures and ballasts constituted an improvement to real property), *review denied* (Minn. Nov. 26, 1986). Here, however, REC failed to construct an improvement to the realty or to make any permanent alteration to the property. At the time appellant received the electrical shock, no new light fixtures had been installed to the conduit appellant touched. Why appellant was shocked was apparently the result of two factors: (1) that he was in contact with the conduit which operated as the ground; and (2) he came in contact with the "hot" 277–volt electrical wire that REC failed to de-energize. Appellant does not claim that the conduit was defective and unsafe, but simply that REC failed to de-energize the electrical wire. There is no claim, and there is no evidence to support such a claim, that appellant's injuries arose out of the installation of any light fixtures or any other improvement made by REC.

In *Wiita v. Potlatch Corp.*, 492 N.W.2d 270 (Minn.App.1992), this court distinguished between injuries or damages occurring as a result of negligent construction activities and those damages caused or resulting from the condition of the improvement. In that case, a bricklayer foreman was injured when cement blocks being moved by a crane fell on him. The blocks were being used in the construction of a fire wall. The injured employee argued that his injuries occurred due to the supervision or negligent operation of the crane operator and not the condition of the wall they conceded was an improvement to real property. The employer countered, arguing that the employee's injuries arose out of the condition of the improvement because " 'but for the fact that the wall was only partially completed' there would have been no need to move the blocks." *Id.* at 271. The court held:

> Where an item does not permanently alter real property, it may not constitute an improvement, and injuries arising from the item are not time barred by the statute.

*Id.* at 272. The *Wiita* court ruled that the blocks did not constitute an improvement or the condition of an improvement because they were not permanently affixed to the wall at the time of the accident. *Id.* Thus, "the accident arose, not from the condition of the improvement, but from the defective condition or negligent operation of the crane." *Id.*

In *Fiveland*, 436 N.W.2d at 480, this court held that injuries arising from a condition of an improvement to real property are covered by Minn.Stat. § 541.051. In *Fiveland*, an individual was injured after he fell into an unguarded and unlighted excavation pit. *Id.* at 479. The excavation was a part of the construction of a new attached garage and basement, and was only temporary. *Id.* The issue presented on appeal was whether an unguarded and unlighted excavation site was a defective and unsafe condition of an improvement to realty within the meaning of Minn.Stat. § 541.051. *Id.* The parties conceded that the temporary excavation site was part of an improvement to the property and the court ruled that the excavation site was a condition of construction of an improvement and that because the site was unguarded and unlit, it was defective for the purposes of Minn.Stat. § 541.051. *Id.* at 480; *see Wiita*, 492 N.W.2d at 271–72 (interpreting *Fiveland* as excluding claims arising from construction conditions of an improvement).

We are of the opinion that REC's conduct is closer to the activities complained of in *Wiita* then those in *Fiveland*. In *Fiveland*,

it was clear that the excavation site, although temporary, was an integral part of the construction of an improvement to real property. The only question presented in that appeal was whether it was in an unsafe and defective condition. Unlike *Wiita*, the issue of negligent construction activities was never presented to the court in *Fiveland*. Conversely, in *Wiita*, this court was specifically asked to address the issue of whether claims arising from negligent construction activities are covered by Minn.Stat. § 541.051.

The same issue is presented in this appeal: whether REC's negligent failure to de-energize the electrical wire constitutes a defective and unsafe condition of an improvement to realty or amounts to negligent construction activity. In this case, it was not the condition of any improvement to realty that caused appellant's injuries; it was the conduct of REC that resulted in appellant's injuries. The electrical wire and conduit had existed in the building prior to any work performed by REC. Like the crane operator's negligence in *Wiita*, appellant's injuries were the result of REC's negligent failure to de-energize the electrical lines. By example, assuming REC had accidently energized the line while appellant was working on it, such conduct is identical to the crane operator's error in *Wiita*. Here, the fact that REC failed to de-energize the line a month prior to the start of the actual remodeling work does not materially change the result. The injuries did not result from the condition of the improvement, but rather the negligence of REC.

We note further, REC did not install any item that permanently altered the real property nor did REC make any permanent alteration to the property. REC did not construct or alter the conduit touched by appellant nor did REC install any light fixtures to the property. REC simply failed to turn off the circuit breaker supplying electrical power to the wire. Therefore, it cannot be said that appellant's injuries arose from the defective and unsafe condition of any permanent improvement to property.

## DECISION

We conclude that appellant's claims are not barred by the two-year statute of limitations contained in Minn.Stat. § 541.051. The plain and ordinary meaning of "construction" does not include demolition work completed in anticipation of future remodeling where there was no permanent alteration or addition made to the real property in question. Similarly, we hold that an individual performing demolition work in preparation of remodeling is not covered by Minn.Stat. § 541.051 where plaintiff's injuries arose not from the defective or unsafe condition of any improvement or alteration made to real property, but rather the negligent construction activities of that individual.

***Reversed and remanded.***