# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1754

_____

Lila Lederman,                                    *
                                                 *
        Appellant,                           *
                                                 *  Appeal from the United States
       v.                                   *  District Court for the
                                                 *  District of Minnesota.
Cragun's Pine Beach Resort; Cragun               *
Corporation; Cragun Enterprises, Inc.;           *
Cragun Golf Management, Inc.; Cragun             *
Properties, Inc.; Cragun Shoreline               *
Corporation; Brad Clark, doing business *
as Clark Excavating,                             *
                                                 *
        Appellees.                           *

_____

Submitted:  December 14, 2000
Filed:    April 23, 2001

_____

Before LOKEN and MAGILL, Circuit Judges, and BATTEY,[1] District Judge.

_____

MAGILL, Circuit Judge.

_____

[1]THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

On August 23, 1995, a pathway at Cragun's Pine Beach Resort collapsed beneath Lila Lederman, causing her to fall into a trench and break her ankle. On June 4, 1998, Lederman sued the various owners and operators of Cragun's Pine Beach Resort (together, "Cragun's"), as well as Brad Clark, the contractor who dug the trench, claiming that Clark negligently excavated the trench and Cragun's negligently failed to protect Lederman from harm. The district court[2] granted the summary judgment motions of Clark and Cragun's, holding that a Minnesota statute of limitations bars Lederman's claim. Lederman appeals, but we affirm.

## I.

Cragun's Pine Beach Resort is a vacation resort near Brainerd, Minnesota. In the summer of 1995, Cragun's began the Shoreline Suites construction project, which involved the destruction of an existing building and the erection of a four-story complex consisting of suites and conference rooms. As part of the project, Cragun's hired Brad Clark to dig a trench so that U.S. West workers could lower existing communications cable that served other Cragun's buildings, and relay the cable to serve the Shoreline Suites as well. The communications cable had to be lowered to make room for the construction of the Shoreline Suites. The trench was about four and one-half feet deep, eight to ten feet wide, and thirty to forty feet long.

About thirty minutes after Clark left the trench area, Lederman walked along a pathway adjacent to the trench. The trench caved in, causing the pathway to collapse underneath Lederman, who fell into the trench and broke her ankle. There

---

[2]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

were no warnings that the pathway was unsafe. Later that day, after U.S. West workers completed the lowering of the communications cable, Clark refilled the trench.

On June 4, 1998, Lederman sued Cragun's and Clark in district court under diversity jurisdiction, claiming that Clark negligently excavated the trench and Cragun's negligently failed to protect Lederman from harm. The district court granted Clark's motion for summary judgment, holding that Minnesota's two-year statute of limitations for actions to recover damages for injuries arising out of an unsafe condition of an improvement to real property barred Lederman's claim because the trench was an improvement to real property. See Minn. Stat. § 541.051 (2000). Subsequently, the district court granted Cragun's motion for summary judgment, holding that § 541.051 also barred Lederman's claims against Cragun's. Lederman appeals the district court's judgments. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review the district court's grant of summary judgment de novo. Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Id. In this diversity case, we apply the substantive law of Minnesota. See id. We review de novo the district court's application of Minnesota law, and, if Minnesota law is ambiguous, we do our best to predict how the Minnesota Supreme Court would resolve the issue. See id.

## A.

In Minnesota, a six-year statute of limitations applies to most personal injury claims alleging negligence. Minn. Stat. § 541.05, subd. 1(5) (2000). However, a two-year limitations period applies to actions for injuries arising out of "improvements to real property":

> Except where fraud is involved, no action by any person in contract, tort or otherwise to recover damages . . . for bodily injury . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property . . . for more than two years after discovery of the injury.

Minn. Stat. § 541.051, subd.1(a) (2000). The Minnesota Supreme Court defines an "improvement to real property" as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Pacific Indem. Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548, 554 (Minn. 1977).

The Shoreline Suites itself is an "improvement to real property" under the Pacific Indemnity test, as it: (1) is a permanent addition of real property; (2) enhances the value of the property; (3) involved the expenditure of labor and money; and (4) required work going well beyond mere repair. The district court reasoned that since the Shoreline Suites is an "improvement to real property," "it follows that excavation, which was an indispensable part of the process of building those suites, is an improvement to real property under Minn. Stat. § 541.051." We agree that the excavation was an "indispensable part" of building the Shoreline Suites. Construction of the Shoreline Suites required U.S. West workers to lower existing communications cable to make

room for the construction and to relay the cable to connect the Shoreline Suites; lowering the communications cable necessitated the trench at issue here.

Lederman, however, argues that the district court should have focused its analysis exclusively on the excavation of the trench rather than on the overall construction process. Since the trench was temporary, Lederman asserts that it cannot constitute an "improvement." We disagree.

Minnesota case law suggests that a temporary trench that is integral to a construction project constitutes an "improvement to real property" under § 541.051. In Fiveland v. Bollig & Sons, Inc., 436 N.W.2d 478 (Minn. Ct. App. 1989), the Minnesota Court of Appeals held that § 541.051 applied to bar a claim brought by a plaintiff who fell into an unguarded excavation that the defendant had dug to build a basement. Id. at 479-81. The Fiveland court never specifically addressed the issue of whether the excavation in that case was an "improvement to real property," apparently because the parties "conceded that the temporary excavation site was part of an improvement to the property." Brandt v. Hallwood Mgmt. Co., 560 N.W.2d 396, 401 (Minn. Ct. App. 1997). However, the Fiveland court at least assumed that the temporary excavation constituted an "improvement to real property."

Furthermore, the Minnesota Court of Appeals subsequently stated that the excavation at issue in Fiveland, "although temporary, was an integral part of the construction of an improvement to real property." Brandt, 560 N.W.2d at 401-02. Therefore, the Brandt court accepted, at least in dicta, that a part of an improvement need not be permanent to be covered by § 541.051, as long as it is an "integral part of the construction." Id. (defining the word "construction" in § 541.051 to mean "the act or process of building, or of devising and forming; fabrication, erection"). In addition, in an unpublished opinion, the Minnesota Court of Appeals has held that a temporary trench dug to install sewer and water pipes is an improvement to real property. Lutz v. J.R. Bruender Constr., Inc., No. C5-93-2097, 1994 WL 121636, at *2 (Minn. Ct.

App. Apr. 12, 1994)[3]; see also American Nat. Bank & Trust Co. v. Booth/Hansen Assocs., Ltd., 542 N.E.2d 925, 927 (Ill. Ct. App. 1989) (interpreting a statute similar to § 541.051 and holding that "excavation prior to construction is an 'improvement'").

We therefore agree with the district court's decision to examine the overall process of constructing the Shoreline Suites to determine whether the trench constituted an "improvement to real property," rather than separating out the various parts of the construction. We find additional support for our conclusion in case law construing analogous statutes. The Seventh Circuit, for instance, stated:

> [T]o artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. . . . We

[3]Lederman notes that Lutz is an unpublished decision and that Minnesota law provides that "[u]npublished opinions of the court of appeals are not precedential." Minn. Stat. § 480A.08, subd. 3(b). Section 480A.08, subd. 3(b) is identical in all relevant respects to 8th Circuit Rule 28A(i), which this court, in a scholarly opinion authored by Judge Richard Arnold, held to be unconstitutional. Anastasoff v. United States, 223 F.3d 898, 905, vacated, 235 F.3d 1054, 1056 (8th Cir. 2000) (en banc). The en banc court vacated the panel decision as moot, simply noting that "[t]he constitutionality of that portion of Rule 28A(i) which says that unpublished opinions have no precedential effect remains an open question in this Circuit." 235 F.3d at 1056. We need not address the constitutionality of Minn. Stat. § 480.08, subd. 3(b) in this case, because we find sufficient support for our holding in published Minnesota case law. Therefore, we leave for another day the constitutionality of rules prohibiting the use of unpublished opinions for precedential value. In the meantime, we have no doubt that the propriety of such rules will continue to gain the attention of the legal journals. See, e.g., Boyce F. Martin, Jr., In Defense of Unpublished Opinions, 60 Ohio St. L.J. 177 (1999); Charles E. Carpenter, Jr., The No-Citation Rule for Unpublished Opinions: Do the Ends of Expediency for Overloaded Appellate Courts Justify the Means of Secrecy?, 50 S.C. L. Rev. 235 (1998).

find that if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property.

Hilliard v. Lummus Co., 834 F.2d 1352, 1356 (7th Cir. 1987); see also Travelers Ins. Co. v. Guardian Alarm Co., 586 N.W.2d 760, 762 (Mich. Ct. App. 1998) (holding that if a component of an improvement is an integral part of the improvement to which it belongs, then the component is an improvement to real property). Accordingly, because the trench at issue here was an integral part of building the Shoreline Suites, we hold that the trench, although merely temporary, was an "improvement to real property" under Minnesota law.

Lederman also contends that the Minnesota courts draw a distinction between construction activity, which is covered by § 541.051, and "demolition-like activity," which purportedly is not. Lederman's contention relies primarily on Brandt, where the plaintiff brought suit after a live electrical line injured him during a renovation of office space. 560 N.W.2d at 398. The Brandt court held that § 541.051 did not apply to bar the plaintiff's claim because the defendant had been hired only to remove existing light fixtures and to de-energize some electrical lines. Id. at 400. According to the court, the plaintiffs presented "no evidence that [the defendants] 'constructed,' 'built,' or added anything new. . . ." Id. The court thus held that the defendants were not engaged in "construction" within the meaning of § 541.051 and that the two-year statute of limitations did not apply to bar the plaintiff's claim. Id.

Lederman analogizes the role of the Brandt defendant to that of Clark, who, Lederman says, was contracted solely for "demolition-like activity"; Clark merely removed dirt so that U.S. West workers could access communications cable. We doubt that the Minnesota Supreme Court would adopt the fine distinction proposed by Lederman. Presumably, such a distinction would give a plaintiff six years to bring a lawsuit against a contractor for damages resulting from the demolition of a wall to make room for an addition to a home, but a plaintiff would have to bring an action within two

years against a contractor who rebuilt the wall. We cannot conceive of any rational reason why the legislature would have made such a distinction.

In any event, the trench at issue here was not just a "demolition-like activity." Instead, Clark dug the trench in part to allow U.S. West workers to relay communications cable to connect the Shoreline Suites. Therefore, even under the distinction between construction and demolition proposed by Lederman, the activities surrounding the digging of the trench are sufficiently "construction-like" that we believe § 541.051 should apply.

Thus, the district court correctly held that the trench dug by Clark constitutes an "improvement to real property" under § 541.051. Accordingly, because Lederman did not file this suit within two years of her injury, her claim against Clark is time-barred.

**B.**

Even if the trench is an "improvement to real property" under § 541.051, as we hold it is, Lederman argues that the district court erred in granting summary judgment to Cragun's because the two-year statute of limitations does not apply to her "claim that Cragun's breached its common law duty to protect her from harm on its property." Instead, Lederman contends, based on § 541.051, subd. 1(c), that Minnesota's general six-year statute of limitations for negligence actions should apply to this case.[4] Section

_____

[4]Additionally, Lederman notes that the pathway was not part of the construction of the Shoreline Suites, and thus contends that "Cragun's duty to protect guests using that pathway continued to exist independently of whether any condition of the 'improvement' itself was defective and unsafe." However, § 541.051, subd. 1(a) provides that a person may not bring an action for bodily injury "arising out of the defective and unsafe condition of an improvement to real property." Lederman concedes that the caving in of the trench caused the pathway to collapse. Since we

541.051, subd. 1(c) provides: "Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation, or inspection of the real property improvement against the owner or other person in possession." Minn. Stat. § 541.051, subd.1(c) (2000).

The district court held that Lederman's complaint failed to allege that she was injured due to Cragun's failure to maintain the pathway; instead, the district court found that "the only plausible reading of the facts in this case is that [Lederman] was injured by the construction activities." The Federal Rules of Civil Procedure provide for a "liberal system of 'notice pleading.'" Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, the Rules merely require the plaintiff to provide a statement of her claim that gives "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

Lederman's complaint states three "CLAIMS FOR RELIEF," including one for negligence, which alleges that the "defendants had a duty to plaintiff to exercise reasonable care to protect plaintiff and others in the course of excavating and maintaining the construction pit. . . . Defendants breached their duty of care by their acts and omissions described above. . . ." Preceding Lederman's negligence claim is her statement that "[n]either the path nor the pit was blocked off, and there were no signs or other devices placed to warn guests at Cragun's not to use the path." Although Lederman's complaint is not a model of clarity, we conclude that she sufficiently alleged a claim that Cragun's negligently maintained the pathway.

---

have held the trench to be part of an "improvement to real property," Lederman's injuries "ar[ose] out of" the improvement.

The district court, assuming that Lederman sufficiently alleged a claim of negligent failure to maintain the pathway, nevertheless rejected Lederman's claim, noting that the Minnesota Supreme Court has stated that negligence in maintaining, operating, or inspecting real property "generally occur[s] after an improvement has been built." Ocel v. City of Eagan, 402 N.W.2d 531, 534 (Minn. 1987). By contrast, injuries resulting from negligence in constructing a real property improvement are governed by the two-year statute of limitations. See id. (holding that claims for damages in constructing the improvement "are expressly covered by the 2-year limitations period"); see also Fisher v. County of Rock, 580 N.W.2d 510, 511 (Minn. Ct. App. 1998) ("[T]he application of Minn. Stat. § 541.051, subd. 1(c), depends on whether the [conduct] is classified as making an improvement to real property or as maintaining real property.") (emphasis added), rev'd on other grounds, 596 N.W.2d 646 (Minn. 1999).

In this case, the construction of the Shoreline Suites, not maintenance work, injured Lederman. Lederman notes, however, that Ocel holds that actions for negligent maintenance, operation, or inspection of an improvement to real property "*generally* occur after an improvement has been built." 402 N.W.2d at 534 (emphasis added). This case is an exception to the general rule, Lederman contends, because guests were at Cragun's while the construction took place.

However, Lederman does not cite, nor have we found, any Minnesota decision that applies § 541.051, subd. 1(c) to actions against an owner for injuries incurred during construction. Indeed, the statutory language cautions against such a reading. Section 541.051, subd. 1(c)'s reference to actions alleging negligence in the "maintenance, operation or inspection" of an improvement to real property suggests an improvement that already has been completed, but that must be kept in a state of repair. For instance, Black's Law Dictionary defines "maintenance" as "[t]he upkeep or preservation of condition of property, including cost of ordinary repairs necessary and proper from time to time for that purpose." Black's Law Dictionary 953 (6th ed. 1990);

-10-

see also Gorton v. Mashburn, 995 P.2d 1114, 1116 (Okla. 1999) ("Maintenance is best characterized as after-care or upkeep."); Webster's Third New International Dictionary 1170, 1581 (1960) (defining "inspection" as "an examination . . . of an installation" and "operation" as "the quality or state of being functional or operative"). In this case, constructing the Shoreline Suites constituted more than mere repair, the improvement as it existed at the time of Lederman's injury could not be called an "installation," and the Suites were not "functional or operative."

Lederman's assertion that § 541.051, subd. 1(c) should apply to this case because guests were at Cragun's while the construction took place is an interesting policy argument. But this court is the wrong forum for Lederman's argument; the Minnesota legislature weighs such arguments, and, as currently written, § 541.051 provides no exception for injuries incurred when an owner of real property has stayed open for business during construction of an improvement. In any event, § 541.051, subd. 1(a) does not prohibit injured parties from initiating lawsuits alleging injury due to defective and unsafe improvements to real property. Rather, the statute merely requires a litigant to bring her suit within two years of injury.

Nor is Sullivan v. Farmers & Merchants State Bank of New Ulm, 398 N.W.2d 592 (Minn. Ct. App. 1986), to the contrary. In Sullivan, the plaintiff injured himself after failing to see a step as he exited the defendant bank, which had not posted a sign warning customers of the step. Id. at 593. The plaintiff sued for negligent design, construction, and maintenance of the exit, as well as failure to warn persons using the exit of a dangerous and unsafe condition. Id. at 594. In addressing the applicability of § 541.051, subd. 1(c) to the plaintiff's claim against the bank, the court stated that

> inclusion of [§ 541.051, subd. 1(c)] evinces a legislative intent to hold owners and possessors to the standard of care required at common law. The fact that the risk results from defects in the design or construction of the property improvement does not relieve the owner or possessor of the

duty to ensure the safety of persons using the premises through use of appropriate warnings. The legislature could not have intended to absolve owners and possessors of property improvements, particularly commercial property held open to the public, from the duty to use reasonable care to protect health and safety. We therefore hold that Minn. Stat. § 541.051, subd. 1 does not relieve the owner or possessor of a property improvement from the duty to warn of dangerous and unsafe conditions on the premises. Because appellants' complaint included an allegation of negligence in the failure to warn persons using the premises of a dangerous and unsafe condition, his claim is not barred by Minn. Stat. § 541.051, subd. 1.

Id. at 595.

Sullivan does not apply to this case because the injury at issue in Sullivan did not occur during construction of the improvement. We therefore agree with the reasoning of the Minnesota federal district court, which stated that although

Minnesota courts have allowed failure to warn claims to go ahead in the improvement to real property context, these cases involved instances where the defendant had taken on a continuing duty to warn *after the improvement to real property was substantially completed*. Thus, in those cases, the defendant's failure to warn was not controlled by [§ 541.051] because the actions on the part of the defendant occurred *after the substantial completion of the construction and were independent of the actions constituting completion of the improvement*.

Henry v. Raynor Mfg. Co., 753 F. Supp. 278, 283 (D. Minn. 1990) (emphases added); see also Horvath v. Liquid Controls Corp., 455 N.W.2d 60, 64 (Minn. Ct. App. 1993) (noting that "a separate and distinct obligation to use due care exists in providing safety information to personnel of [the owner] involving the use of the facility and upon which the personnel relied *after substantial completion of construction* and is not governed by Minn. Stat. § 541.051") (emphasis added).

The district court also held that applying § 541.051, subd. 1(c) to this case would create potential equal protection problems. In Pacific Indemnity, the Minnesota Supreme Court examined a prior version of § 541.051, which provided:

> Except where fraud is involved, no action . . . shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or construction of such improvement to real property more than two years after the discovery thereof, nor, in any event more than ten years after the completion of such construction. *This limitation shall not be applied in favor of any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe conditions of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.*

Minn. Stat. § 541.051 (1965) (emphasis added). The Pacific Indemnity court held that § 541.051 violated the Minnesota Constitution because its exclusion of owners from its protection "grant[ed] a special immunity to persons within its terms, without a rational basis for regarding those persons as a distinct and separate class." 260 N.W.2d at 555.[5] In doing so, the court stated that it found persuasive the reasoning of three opinions from other states construing similar statutes. Id. (citing Skinner v. Anderson, 231 N.E.2d 588 (Ill. 1967); Fujioka v. Kam, 514 P.2d 568 (Haw. 1973); Kallas Millwork Corp. v. Square D Co., 225 N.W.2d 454 (Wis. 1975)).

In Fujioka, for example, a portion of the defendant-owner's roof fell on the plaintiff, who then sued the owner. 514 P.2d at 569. The owner filed a third-party complaint against the engineer and contractor who worked on constructing the roof. Id. The trial court granted the summary judgment motions of the engineer and

---

[5]Although Pacific Indemnity addressed § 541.051's ten-year statute of repose rather than its two-year statute of limitations, nothing in the court's opinion suggests that its holding would not apply to the statute of limitations as well.

contractor because they had rendered their services more than ten years before the roof collapsed.  Id.

On appeal, the Hawaii Supreme Court addressed the question of whether the grant of immunity to the engineer and contractor violated the equal protection clauses of the United States or Hawaii Constitutions.  Id. at 570.  The court noted that the statute "on one hand grants immunity to the engineer and the contractor," but also "burdened" the owner with liability "for the reason that, under the common law rule in this jurisdiction, the owners are under a duty to use reasonable care for the safety of all persons reasonably expected to be upon the premises."  Id. at 571.  The court therefore held that there was no "rational basis for treating the engineer and the contractor differently from the owners" and that the statute constituted "an invidious discrimination violative of the equal protection guaranty."  Id. at 572.

The Minnesota legislature subsequently amended § 541.051 to place owners of real property within the protection of § 541.051, subd. 1(a).  In Calder v. City of Crystal, 318 N.W.2d 838 (Minn. 1982), the Minnesota Supreme Court examined the constitutionality of the amended statute.  The plaintiffs in Calder sued the City of Crystal after their homes sustained property damage during heavy rainfalls.  Id. at 839.  The plaintiffs claimed that the City's negligent design, installation, and maintenance of the water drainage system proximately caused the damage.  Id.  The City impleaded the designers and installers of the drainage system.  Id.  After setting out the amended statute, with "the owner" in italics, the court stated: "The statute as amended thus added into its coverage those individuals whom we noted in Pacific Indemnity had been improperly excluded.  It also eliminated the prohibition against favored status of 'any person in actual possession and control as owner, tenant, or otherwise.'"  Id. at 843.  The court then held that the "legislature did close the door to objection on equal protection grounds."  Id.

-14-

Although we refrain from deciding whether allowing Lederman to proceed with her claim against Cragun's would conflict with the <u>Pacific Indemnity</u> equal protection analysis, we do note that allowing Lederman's claim to proceed would "treat[] [people such as] the engineer and the contractor differently from . . . owners." <u>Fujioka</u>, 514 P.2d at 572.[6]  Courts should not construe legislation to be unconstitutional "if any other possible construction remains available." <u>NLRB v. Catholic Bishop of Chicago</u>, 440 U.S. 490, 500 (1979).  Not only do we think our interpretation is "possible," we conclude that our reading is the most reasonable construction of § 541.051.  Therefore, we hold that § 541.051, subd. 1(c) does not apply to Lederman's claim against Cragun's.

### III.

We AFFIRM the district court.  The trench was part of an "improvement to real property" under § 541.051, thereby barring Lederman's complaint under the statute of limitations.  Furthermore, § 541.051, subd. 1(c) does not apply to remove Cragun's from the protection of subd. 1(a)'s two-year limitations period.

---

[6]Although we take no position on the wisdom of the <u>Pacific Indemnity</u> court's holding, we note that many courts construing analogous statutes have held that there is a rational basis for treating owners and contractors, for instance, differently. <u>See, e.g.</u>, <u>Carter v. Hartenstein</u>, 455 S.W.2d 918, 920 (Ark. 1970) (stating that "owners of buildings or structures who are in sole control of premises after completion of the work are not similarly situated with [architects and contractors]. . . . Particularly is this true after construction is substantially completed and accepted by the owners.  Part of acceptance is to accept some future responsibility for the condition of the premises."); <u>Blaske v. Smith & Entzeroth, Inc.</u>, 821 S.W.2d 822, 830 (Mo. 1991) (en banc) ("Once construction is completed, the designers and builders normally cease to be connected with the improvement, while owners and occupiers continue in control of the improvement during its useful life.").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.