**In the Matter of the Kenneth WREN, Residential Relocation Claim.**

**No. A04–207.**

Court of Appeals of Minnesota.

Sept. 7, 2004.

James J. Thomson, Robert J.V. Vose, Kennedy & Graven, Minneapolis, MN, for relator Richfield Housing Redevelopment & Authority.

Jon W. Morphew, Kirk Schnitker, Schnitker & Associates, P.A., Minneapolis, MN, for respondent Kenneth Wren.

David A. Davenport, Winthrop & Weinstine, P.A., Minneapolis, MN, for respondent Lyndale Gateway.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by STONEBURNER, Presiding Judge; SCHUMACHER, Judge; and PARKER, Judge.*

## OPINION

ROBERT H. SCHUMACHER, Judge.

On appeal by writ of certiorari in this relocation-benefits dispute, the Richfield Housing and Redevelopment Authority (HRA) argues that an administrative law judge (ALJ) erred by concluding that respondent Kenneth Wren is entitled to relocation benefits under the Minnesota Uniform Relocation Act. We affirm.

## FACTS

The 7600 block of Lyndale Avenue South was first identified for redevelopment in 1985 by consultants working for the HRA. In 1999, the HRA approved a contract with CSM Properties, Inc. to redevelop the area. Wren had recently purchased a home in the proposed redevelopment area. Between January 2000 and July 2002, the City of Richfield sent Wren multiple letters updating him on the progress of the redevelopment project.

In August 2002, the HRA approved a contract with respondent Lyndale Gateway, LLC to handle the final phase of the redevelopment project. The contract contains the following clause:

It is the intention of the parties that the tracts of land which comprise the Redevelopment Property are to be acquired through a combination of direct acquisitions by [Gateway] and acquisitions by the HRA followed by conveyances to [Gateway]. Unless specifically provided otherwise in this Agreement,

Minn. Const. art. VI, § 10.

[Gateway] shall be responsible for all acquisition costs and the cost of relocation benefits and assistance provided to any party displaced as a result of the development. It is further the intention of the parties that, whenever possible, direct acquisition by [Gateway] is preferred.

Under the contract, Gateway could request the HRA to condemn properties it was unable to acquire, and the HRA would then convey those properties to Gateway.

In September 2002, a Gateway representative mailed Wren a purchase agreement for the sale of his home. After meeting with the representative and negotiating the sale price of his home, Wren signed the purchase agreement. Clause 7 in an addendum attached to the purchase agreement states: "Seller specifically acknowledges and agrees that neither [Gateway] nor the City of Richfield shall have any obligation to pay or provide to Seller, any relocation assistance, services, payments or benefits. Additionally, Seller expressly waives any claim to relocation assistance, services, benefits or payments."

The closing on Wren's home occurred in June 2003. Wren then submitted a claim for relocation benefits. An ALJ concluded that Wren was eligible for relocation benefits from the HRA because the HRA undertook the acquisition of his home and he is a displaced person within the meaning of the Minnesota Uniform Relocation Act. The ALJ also concluded that the relocation-benefits waiver contained in Clause 7 of the addendum attached to the purchase agreement between Wren and Gateway was invalid because it did not comply with Minn.Stat. § 117.521, subd. 1 (2002) (providing in part that waiver must describe type and amount of assistance property owner is eligible for and burden is on acquiring authority to show waiver was entered into voluntarily).

The HRA petitioned for reconsideration of the decision, which was denied. The HRA then filed an appeal with this court, arguing the ALJ erred in concluding that the HRA undertook the acquisition of Wren's home. The HRA does not contest the ALJ's conclusion that the relation-benefits waiver was invalid.

## ISSUE

Did the ALJ err by concluding that Wren was eligible to receive relocation benefits from the HRA under the Minnesota Uniform Relocation Act?

## ANALYSIS

 Statutory construction is a question of law that we review de novo. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002). An appellate court need not defer to an administrative decision on a question of law. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989).

The Minnesota Uniform Relocation Act was created to make public funds available for relocation costs incurred by households and businesses displaced by public acquisitions of property where there is no federal financial participation. *In re Relocation Benefits of James Bros. Furniture, Inc.*, 642 N.W.2d 91, 95 (Minn.App.2002) (superseded by statute on other grounds), *review denied* (Minn. June 18, 2002); *see also* Minn.Stat. 117.52 (2002). Under the relocation act, an acquiring authority must provide relocation benefits for "all acquisitions undertaken" by the authority. *Id.,* subd. 1. "Acquiring authority" is defined as "the state and every public and private body and agency thereof which has the power of eminent domain." Minn.Stat. 117.50, subd. 5(a) (2002). The term "acquisition" includes acquisitions by eminent domain and by negotiation. *Id.,* subd. 4 (2002).

If a governmental entity undertakes acquisition of private property, the entity must pay relocation benefits to any person determined to be a "displaced person" within· the meaning of the relocation act. *See James Bros. Furniture, Inc.*, 642 N.W.2d at 98. The relocation act defines "displaced person" as including "any person who moves from real property ... as a result of acquisition undertaken by an acquiring authority." Minn.Stat. § 117.50, subd. 3 (2002).[1]

◼ On appeal, the HRA argues that it did not "undertake" the acquisition of Wren's home and consequently it is not liable to pay Wren relocation benefits under the relocation act. The relocation act does not define the term "undertaken." *See* Minn.Stat. § 117.50 (2002). The ALJ consulted the American Heritage College Dictionary in interpreting the term "undertaken" to mean "take upon oneself," "commit oneself," or "begin." Because the relocation act does not define the term "undertaken," the ALJ's common-sense interpretation of the term is reasonable, and we conclude it is not an error of law. *See Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) (stating courts are to give effect to plain meaning of the statute's words "without resort to technical legal constructions of its terms"); *Brandt v. Hallwood Mgmt. Co.*, 560 N.W.2d 396, 400 (Minn.App.1997) (using dictionary to interpret statutory term "construction"), *review denied* (Minn. June 11, 1997); *Fiveland v. Bollig & Sons, Inc.*, 436 N.W.2d 478, 480 (Minn.App.1989) (using dictionary to interpret statutory term "defective"), *review denied* (Minn. Apr. 24, 1989).

◼ After interpreting the term "undertaken," the ALJ analyzed the history of the redevelopment project and the HRA's involvement in it and concluded that the HRA undertook the acquisition of Wren's home. The record supports this conclusion. The city contemplated redeveloping the 7600 block of Lyndale Avenue South since 1985; solicited proposals from developers, including Gateway, for the redevelopment project; and sent approximately 20 letters to property owners during the redevelopment to update them on the project. The letters invited property owners to contact city officials with any questions. In one letter, the city encouraged homeowners to negotiate with Gateway.

In its contract with Gateway, the HRA agreed to use its power of eminent domain if Gateway was unable to negotiate private agreements with homeowners, and the HRA did condemn some commercial properties to complete the redevelopment project. The city also established a tax increment financing district to facilitate the financing of public development and redevelopment in the project area. The record shows that the HRA was significantly involved in the redevelopment project. Under these circumstances, we conclude that the ALJ correctly determined the HRA began or "undertook" the acquisition of Wren's home within the meaning of the relocation act.

The HRA argues that this conclusion is contrary to the holding in *Gilliland v. Port Auth. of St. Paul*, 270 N.W.2d 743 (Minn. 1978). In that case, the port authority briefly held title to a hotel to enable the owner to receive bond sale proceeds to renovate the hotel. *Id.* at 747. The sale of the hotel and the leaseback arrangement

---

1. The legislature amended the definition of "displaced person" in 2003. *See* Minn.Stat. § 117.50, subd. 3 (Supp.2003). The parties agree that this amendment does not apply in this case. And the parties do not dispute the ALJ's conclusion that Wren is a displaced person under the relocation act.

..

between the hotel's owner and the port authority gave the port authority no power to possess the hotel or to use it for its own purposes. *Id.* The supreme court held that relocation benefits were not available under the relocation act "where the governmental action causing displacement is solely the financing of a private rehabilitation project." *Id.*

*Gilliland* is distinguishable from this case. Unlike the port authority in *Gilliland,* the city has had a significant role in redeveloping the 7600 block of Lyndale Avenue South. Aside from initiating and financing the project, the city communicated regularly with property owners in the redevelopment area, solicited and contracted Gateway to acquire property in the redevelopment area, agreed to exercise its power of eminent domain if Gateway could not obtain property, and exercised its power of eminent domain to acquire commercial property within the redevelopment property. The holding in *Gilliland* is not dispositive in this case.

## DECISION

The HRA had significant involvement in the redevelopment of the 7600 block of Lyndale Avenue South and undertook the "acquisition" of Wren's property within the meaning of the relocation act. Wren is entitled to relocation benefits.

**Affirmed.**